# EXHIBIT 1

# CATHY PROSSER WILCOX
## CLERK OF COURTS
### HANCOCK COUNTY COURT OF COMMON PLEAS
300 SOUTH MAIN STREET
FINDLAY, OH 45840
(419) 424-7037

# SUMMONS

Case Number: 2018 CV 00049

**Plaintiff(s):**                           **Defendant(s):**

YRI PROPERTIES              VS          BOENNING & SCATTERGOOD INC
PO BOX 1807                             140 E TOWN STREET SUITE 1270
FINDLAY, OH 45839                       COLUMBUS, OH 43215

TO THE ABOVE NAMED DEFENDANT(S):

    You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the plaintiff(s) named herein.

    You are required to serve upon the plaintiff(s) attorney, or upon the plaintiff(s) if he/she/they have/has no attorney of record, a copy of your answer to the complaint within twenty-eight (28) days after service of this summons upon you, exclusive of the day of service.  Said answer must be filed with this court within three (3) days after service on plaintiff(s) attorney.

    The name and address of the plaintiff(s) attorney is as follows:

THOMAS P KEMP
510 SOUTH MAIN STREET
FINDLAY, OH 45840

    If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

Date:  February 8, 2018

Cathy Prosser Wilcox_____
                         Clerk

                        Deputy Clerk

HANCOCK COUNTY, OHIO
FILED

2018 FEB -7  PM 12: 18

GARY BARGER WILCOX
CLERK OF COURTS

S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S

## IN THE COURT OF COMMON PLEAS OF HANCOCK COUNTY, OHIO

S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S

YRI Properties, LLC       :     Case No. 2018-CV- 49
P.O. Box 1807
Findlay, Ohio 45839,       :     (Hon. _Judge Routson_ )

         Plaintiff,       :     **COMPLAINT FOR BREACH OF**
                                        **CONTRACT; TORTIOUS**
vs.       :     **INTERFERENCE WITH**
                                          **BUSINESS RELATIONSHIP;**
Boenning & Scattergood, Inc.       :     **FRAUD; DECLARATORY**
140 E. Town Street, Suite 1270               **JUDGMENT; SECURITIES**
Columbus, OH 43215,       :     **FRAUD AND BREACH OF**
                                          **FIDUCIARY DUTY**
         Defendant.       :

      :     **JURY DEMAND ENDORSED**
      :     **HEREON**

      :     Thomas P. Kemp (004878)
               EASTMAN & SMITH LTD.
      :     510 S. Main Street
               Findlay, OH 45840
      :     Telephone: (419) 424-5847
               Fax: (419) 424-9860
      :
               John M. Carey (0006248)
               Mark W. Sandretto (0079536)
               EASTMAN & SMITH LTD.
               One SeaGate, 24th Floor
               P. O. Box 10032
               Toledo, Ohio 43699-0032
               Telephone:  (419) 241-6000
               Fax:  (419) 247-1777

               Attorneys for Plaintiff

S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S-S

Now comes Plaintiff YRI Properties, LLC ("Plaintiff" or "**YRI**"), by and through counsel, and as and for its Complaint herein against Defendant Boenning & Scattergood, Inc. ("Defendant" or "**Boenning**") states as follows:

## FACTS COMMON TO ALL ALLEGATIONS

1.      At all material times stated herein, YRI has been, and still is, an Ohio corporation with its principal place of business in Findlay, Hancock County, Ohio.

2.      Upon information and belief, at all material times stated herein, Boenning has been, and still is, a Pennsylvania corporation with offices, employees, and agents in Columbus, Franklin County, Ohio.

3.      Upon information and belief, Boenning transacts business in Ohio by contracting to provide investment banking services with Ohio citizens and/or entities.

4.      YRI is in the business of purchasing, renovating, and/or developing single and multi-family residential properties in the area of Findlay, Hancock County, Ohio.

5.      In particular, YRI is the manager/developer of the project more commonly known as Townhomes of Liberty Ridge ("**Townhomes**") located at 200 Thimbleberry Dr., Findlay, Ohio 45840.

6.      The Townhomes were to be developed in three phases. On or about April 2016, YRI independently secured financing for phase one of the project and, accordingly, began construction on the Townhomes.

7.      On or about July 2016, YRI sought re-financing for phase one and sought additional financing to complete phases two and three of the Townhomes.

8.      On or about October 5, 2016, YRI entered into a written contract with Boenning for it to provide investment banking services, including, but not limited to, being the exclusive

2

underwriter for a contemplated tax-exempt bond offering issued through the Blanchard Valley Port Authority for the financing for the Townhomes ("**Contract**"). A complete and accurate copy of the Contract is attached as **Exhibit A**.

9.      Thereafter, Boenning attempted to place the tax-exempt bond financing for the entire Townhomes project, including a re-finance for phase one of the Townhomes project.

10.     Boenning communicated to YRI that financing would be secured by March 28, 2017, and, in reliance thereon, YRI undertook additional obligations to begin construction of phase two of the Townhomes.

11.     When financing was not secured by March 28, 2017, YRI was required to mortgage its other assets to cover the obligations undertaken in reliance on Boenning's consistent and repeated representations that financing would be secured.

12.     After approximately nine months, not only had Boenning still failed to secure financing for the entire Townhomes project, it had also failed to secure refinancing for phase one on terms acceptable to YRI and actively sought to preclude YRI from sourcing financing from alternative lenders.

13.     The events and occurrences giving rise to this dispute transpired in Hancock County, Ohio.

14.     The amount in controversy exceeds $25,000.

15.     Jurisdiction and venue are therefore proper in this Court.

## COUNT ONE
### (Breach of Contract)

16.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 15, above, as if fully rewritten herein.

17.     Boenning and YRI were parties to the Contract, attached as **Exhibit A**.

3

18.     Pursuant to the Contract, among other things, Boenning agreed to "place/sell the bonds/loans for acquisition financing in an expeditious and commercially reasonable manner".

19.     Boenning, however, failed to secure financing in a commercially reasonable manner and according to the terms agreed upon with YRI and, thus, materially breached the Contract.

20.     YRI sustained hundreds of thousands of dollars in damages as a direct and proximate result of Boenning's breach, including, but not limited to, increased construction costs, lost profits, and additional financing costs, and, accordingly, YRI is entitled to recover any and all damages as may be available in this action in an amount to be proven at trial, together with such other and further relief as the court deems necessary, including an award of reasonable attorney fees, costs, and expenses.

## COUNT TWO
### (Tortious Interference with Business Relationship)

21.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 20, above, as if fully restated herein.

22.     After Boenning was unable to secure financing for the Townhomes by the original deadline, Boenning representative, Rob Crotty ("**Crotty**"), recommended that YRI inquire about alternative financing options, including securing a loan from a local bank.

23.     In reliance thereon, beginning in May of 2017, YRI initiated contact with Cooperative Business Services, LLC ("**CBS**") to assist with the refinancing of phase one of the Townhomes and with State Bank & Trust Co. ("**State Bank**") to secure financing for phase two of the Townhomes.

24.     Notwithstanding Boenning's failure to place and sell the contemplated bond offering, on or about June 21, 2017, Crotty contacted State Bank and asserted that Boenning had

4

the exclusive engagement to underwrite the financing for the Townhomes and, further, refused to release certain environmental reports to CBS in furtherance of phase one refinancing.

25.     In reliance upon Boenning's communication, State Bank delayed processing YRI's application for a loan and only consented to finance phase two of the Townhomes after several more months' delay and with an additional infusion of equity investment, which diluted YRI's sole member's investment.

26.     Boenning's wrongful interference with YRI's alternative financing arrangements was without justification and caused damages in the form of increased costs and lost profits to YRI due to the delay in securing financing and the attendant delay in developing phase two of the Townhomes.

27.     Plaintiff is entitled to an award of such damages, including punitive damages, as may be available in an action for tortious interference with business relationship in an amount to be proven at trial and any such other relief as the court deems necessary including an award of reasonable attorney fees, costs, and expenses.

## COUNT THREE
### (Fraud)

28.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 27, above, as if fully restated herein.

29.     Boenning representative, Crotty, represented to YRI at their initial meeting on or about July 26, 2016, and continuing thereafter, that Boenning had the requisite competence, experience and reputation required to offer and place bonds.

30.     Boenning representative, Crotty, represented to YRI on or about August 18, 2016, that he was personally competent and experienced in offering and placing bonds/loans of similar amounts and for similar projects.

5

31.    Boenning also failed to disclose a temporary SEC Cease and Desist Order entered into on February 2, 2016 (**"SEC Order"**), that sanctioned Boenning for insufficient due diligence and disclosures in placing and offering municipal bonds, like the one contemplated by the Contract. See SEC Order at **Exhibit B**.

32.    YRI, in reliance upon such representations of institutional reputation and successful experience entered into a contract with Boenning for investment banking services.

33.    Boenning's representations were made with an utter disregard or recklessness for the truth and made with the intent to induce YRI to contract for its services.

34.    YRI has incurred damages as a direct and proximate result of its reliance on Boenning's representations.

35.    Plaintiff is entitled to an award of such damages, including punitive damages, as may be available in such action in an amount to be proven at trial and any such other relief as the court deems necessary including an award of reasonable attorney fees, costs, and expenses.

## COUNT FOUR
### (Declaratory Judgment)

36.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 34, above, as if fully restated herein.

37.    Boenning did not secure financing pursuant to the terms of its Contract with YRI.

38.    Pursuant to the Contract, Boenning is only entitled to compensation if YRI executes a "Plan of Finance" for the Townhomes and only from the proceeds of the sale or placement of the debt issuance. See **Exhibit A**.

39.    There is an actual and justiciable controversy between the parties which necessitates speedy relief.

6

40.    Accordingly, Plaintiff is entitled to an order declaring that it owes no fees and/or compensation to Boenning for services rendered under the Contract.

## COUNT FIVE
### (Breach of Fiduciary Duty)

41.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 39, above, as if fully restated herein.

42.    Boenning, as YRI's broker dealer, was in a position of superiority and influence over YRI when it came to the offering and sale of securities.

43.    YRI placed a special confidence and trust in Boenning, by and through its representative, Crotty, based upon its representations to YRI regarding reputation and experience in the offering and sale of securities.

44.    Both Boenning and YRI understood that a special confidence had been reposed in Boenning to secure financing through the offering and sale of a municipal bond for the benefit of YRI.

45.    Based upon this fiduciary relationship, Boenning had a duty to disclose material information related to the offering of the municipal bond to YRI.

46.    Boenning breached that duty by failing to disclose material information to YRI about the SEC Order that called into question Boenning's institutional reputation and qualifications for properly offering and placing municipal bonds.

47.    Boenning also breached that duty by offering a municipal bond on terms that were untenable to investors considering the financial situation of YRI.

48.    Boenning's actions and omissions proximately caused injury to YRI, who in reliance upon their special relationship, acted in accordance with Boenning's representations and recommendations.

7

49.    YRI suffered damages from increased construction costs and lost profits due to the delay in securing financing to develop phases two and three of the Townhomes.

50.    Plaintiff is entitled to an award of such damages as may be available in such action in an amount to be proven at trial and any such other relief as the court deems necessary including an award of reasonable attorney fees, costs, and expenses.

## COUNT SIX
### (State Securities Fraud)

51.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49, above, as if fully restated herein.

52.    The bond offering prepared by Boenning was a "security" pursuant to R.C. 1707.01. A copy of the bond offering is not attached inasmuch as Boenning already has a copy.

53.    Boenning had a fiduciary relationship with YRI and had a duty to disclose material information that concerned the offering and sale of the municipal bond.

54.    Pursuant to R.C. 1707.44(B), sellers of securities are forbidden to knowingly make or cause to be made any false representation concerning a material and relevant fact.

55.    Boenning, by and through its representative, Crotty, violated R.C. 1707.44(B) by misrepresenting to YRI Boenning's ability to place the Townhomes bond offering pursuant to the terms agreed upon between YRI and Boenning.

56.    Pursuant to R.C. 1707.44(M), "[n]o investment advisor or investment advisor representative shall engage in any act, practice, or course of business that is fraudulent, deceptive, or manipulative."

4313043 .1

57.     Boenning, by and through its representative, Crotty, violated R.C. 1707.44(M) by knowingly offering bond terms that were untenable to investors considering the financial situation of YRI.

58.     Boenning also failed to disclose the SEC Order that evidenced an institutional failure to complete appropriate due diligence and make proper disclosures regarding the placement and offering of municipal bonds. See **Exhibit B**.

59.     The misrepresentations of Boenning and its failure to disclose material facts to YRI, despite a duty to do so, constituted fraudulent, deceptive or manipulative behavior toward YRI, in violation of R.C. 1707.44.

60.     YRI is entitled to rescission and/or damages in an amount to be proven with specificity at trial, plus interest, fees and costs.

<u>COUNT SIX</u>
<u>(Federal Securities Fraud)</u>

61.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 39, above, as if fully restated herein.

62.     Boenning, by virtue of its fiduciary relationship with YRI, had a duty to disclose material facts in connection with the offering for sale of the security contemplated in the Contract with YRI.

63.     Boenning failed to disclose the existence of a SEC Order, that was in place and enforceable both before and throughout YRI's entire relationship with Boenning, that sanctioned Boenning for improper disclosures and due diligence when it came to the placement and offering of municipal bonds. See **Exhibit B**.

9

64.     The omission cast doubt on Boenning's representations about its institutional reputation, experience, quality of services, and ability to offer and place the municipal bond on acceptable terms to YRI.

65.     Such omission was a material, resulted in YRI being under the impression of a half-truth, and could have significantly altered the reasonableness of YRI's decision to contract for Boenning's services.

66.     Boenning, by and through its representative, Crotty recklessly failed to disclose the SEC Order to YRI to induce it to enter into the Contract.

67.     Boenning should have known, or was reckless with respect to that knowledge, that an enforceable SEC Order regarding Boenning's prior violations in offering municipal securities was a material fact to YRI's execution of a Contract for the placement and offering of a municipal bond.

68.     YRI relied upon representations made by Boenning about its institutional reputation, experience, and quality of services in the area of municipal securities, to YRI's detriment, including the execution of the Contract and foregoing other financing options.

69.     Boenning's omission caused YRI to forego seeking alternative financing arrangements and caused damages in the form of increased construction costs and lost profits to YRI due to the delay in securing financing to develop phases two and three of the Townhomes.

70.     The failure to disclose this material fact to YRI prior to the execution of the Contract for the placement and sale of a municipal bond, is a violation of 15 U.S.C. §78(j) and 17 C.F.R. §240.10b-5(b) & (c).

4313043 .1

71.     Plaintiff is entitled to an award of such damages as may be available in such action in an amount to be proven with specificity at trial and any other such relief as the court deems necessary including an award of reasonable attorney fees, costs, and expenses.

**WHEREFORE,** Plaintiff YRI Properties, LLC prays that the Court enter judgment in its favor and against defendant Boenning & Scattergood, Inc. as follows:

i.      For damages in an amount exceeding $25,000, but to be proven with specificity at trial;

ii.     For punitive damages;

iii.    For rescission of the Contract;

iv.     For an order declaring that Plaintiff does not owe any fees and/or compensation to Defendant for services performed under the Contract;

v.      For such other and further relief available at law or in equity which this Court deems just and equitable; and

vi.     The reasonable attorney fees, costs, and expenses incurred herein.

Respectfully submitted,

EASTMAN & SMITH LTD.

Thomas P. Kemp (004878)
EASTMAN & SMITH LTD.
510 S. Main Street
Findlay, OH 45840
Telephone: (419) 424-5847
Fax: (419) 424-9860

I, the undersigned Clerk of the Common Pleas Court within and for said Hancock Co., do hereby certify that the foregoing is a true and correct copy of the original _Complaint_

_____ on _____

_____
Clerk of the Common Pleas Court

By: _____

4313043 .1

John M. Carey (0006248)
Mark W. Sandretto (0079536)
EASTMAN & SMITH LTD.
One SeaGate, 24th Floor
P. O. Box 10032
Toledo, Ohio 43699-0032
Telephone: (419) 241-6000
Fax: (419) 247-1777

Attorneys for Plaintiff

## JURY DEMAND

Plaintiff YRI Properties, LLC hereby demands a trial by jury for all the issues so triable.

Attorney for Plaintiff



# BOENNING & SCATTERGOOD
ESTABLISHED 1914

August 11, 2016

Mr. Andrew Yates
Owner
YRI Properties, LLC
P.O. Box 1807
Findlay, Ohio 45839
Re: Engagement Letter for Financing - "The Townhomes of Liberty Ridge" Project

Dear Mr. Yates:

We refer to recent discussions between our firms, Boenning & Scattergood, Inc. ("the Underwriter"), and YRI Properties, LLC ("the Developer"), concerning financing for the "The Townhomes of Liberty Ridge" ("The Project"), at 200 Thimbleberry Dr., Findlay, Ohio 45840. Proceeds from the financing may be used to (i) refinance the outstanding debt on the project, (ii) fund the cost of new construction, (iii) fund the cost of land acquisition, (iv) pay certain costs of issuance, and (v) fund the reserves set aside for the project.

We hereby agree to the following terms and conditions to provide investment banking services in accordance with and subject to the terms and conditions set forth herein.

1.    The Project

The proposed project includes refinance, new construction of luxury townhomes, and land acquisition in Findlay, Ohio.

2.    Agreements of the Underwriter      We agree:

(a)    Meet with executive management of the Developer, and other Project team members to understand goals, objectives, and issues related to the Project;

(b)    Identify capital structuring options to secure and incur new debt;

(c)    Cooperate with your officials, employees, contractors and agents, relative to the preparation of pertinent information regarding the financing of the Project, including but not limited to related economic, financial, and Project data ("Credit Profile"), and to disseminate the Credit Profile to banks, institutional investors, and other appropriate sources;

# BOENNING&SCATTERGOOD

ESTABLISHED 1914

(d)     Provide advice on national and regional market conditions and trends as they relate to the capital plan and suggest revisions, as appropriate;

(e)     Recommend a funding strategy ("Plan of Finance") for the Project including the advantages and disadvantages of other options, a detailed sources and uses of proceeds, security for the indebtedness, principal amortization, creation of reserve funds, maturity schedules, early redemption features, timing, and overall cost;

(f)     Prepare timetables, assign responsibilities, and monitor and coordinate the activities of the Project team to ensure that each activity is completed in a timely, efficient, and cost effective manner;

(g)     To cooperate with your attorneys and nationally recognized bond, underwriter, and/or placement agent counsel satisfactory to us, regarding instruments and procedures necessary to authorize and secure the financing and regarding other related legal matters;

(h)     To hold in confidence, without distribution outside Boenning & Scattergood, Inc. proprietary information of the Developer, (except as specifically required to be divulged under federal or state laws, or as expressly authorized by the Developer and so long as the withholding does not violate rules of disclosure as determined by the Securities Exchange Commission, Financial Industry Regulatory Authority, or Municipal Securities Rulemaking Board);

(i)     To place/sell the bonds/loans for acquisition financing in an expeditious and commercially reasonable manner; and

(j)     To negotiate fees and terms with various institutions in the best interests of the Developer.

3.     <u>Agreements of the Developer</u>     By acceptance hereof, the Developer agrees:

(a)     That Boenning & Scattergood, Inc. shall have the exclusive right as Underwriter to provide investment banking services with regard to the financing of the Project;

(b)     Pay fees in accordance to the following:

        1)     $10,000 good faith deposit ("Good Faith Deposit") to Underwriter, payable upon execution of this agreement.

# BOENNING&SCATTERGOOD

ESTABLISHED 1914

(c)     If the Developer executes the Plan of Finance, the Developer will pay or cause to be paid from the proceeds of the sale or placement of the debt issuance, the following: Bond Counsel Fees, Rating Agency Fees, Underwriter's Discount / Placement Agent Fee, Underwriter's Counsel Fees, Paying Agent and Registrar Fees, Verification Agent Fees, Bond Insurance Premium, and miscellaneous costs of issuance.

(d)     To disclose and make available to us all necessary information relating to the Developer and the Project, and to furnish to us such summaries and documents pertaining to the Developer and to the Project as we may from time to time request;

(e)     To take such action and subscribe to or adopt such resolutions and other instruments as necessary and appropriate in order to effect the plan of financing;

(f)     To pay all costs for third-party consultant reports required for underwriting including but not limited to, financial feasibility studies, market studies, appraisals, environmental audit reports, property boundary surveys, architectural/engineering reviews, and project cost reviews, if applicable, will be the responsibility of the Developer solely.

4.     <u>General</u>

(a)     Whenever written notice shall be required hereunder, notice shall be mailed to the following address:

<u>To the Underwriter at</u>:

Boenning & Scattergood, Inc.
140 E. Town Street, Suite 1270
Columbus, OH 43215
Attn.: Rob Crotty, Vice President

<u>To the Developer at</u>:

YRI Properties, LLC
P.O. Box 1807
Findlay, Ohio 45839
Attn.: Mr. Andrew Yates, Owner

140 E. Town Street · Suite 1270 · Columbus, OH 43215
614.705.6960 · 877.267.0240 · 614.705.6965
www.boenninginc.com · Member FINRA / SIPC

# BOENNING&SCATTERGOOD

ESTABLISHED 1914

(b)    The Underwriter is an independent contractor and shall not be deemed an employee, agent, or official of the Developer;

(c)    This letter agreement supersedes any prior agreements and understandings between the parties hereto and may be changed only in writing mutually accepted by the Developer, and Underwriter;

(d)    We shall not be responsible for any expenses of the Developer or others, or for any charges or claims relating to the proposed issuance of the Bonds/Loans or otherwise, if the underwriting or loan agreement is not executed;

(e)    The parties understand and agree that the Underwriter's services with regard to the Project will commence immediately upon the execution of this agreement.

# BOENNING & SCATTERGOOD

ESTABLISHED 1914

If the foregoing correctly sets forth our understanding and agreement, kindly so indicate by signing and returning to us the enclosed copy of this letter along with a deposit in the amount of $10,000. We look forward to working with you on this financing.

Sincerely,

Boenning & Scattergood, Inc.

Rob Crotty
Vice President

Confirmed and agreed to as of the date first above written:

YRI Properties, LLC

By: _____

Its: _____

Date: 10-5-16



UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

**SECURITIES ACT OF 1933**
Release No. 10018 / February 2, 2016

**SECURITIES EXCHANGE ACT OF 1934**
Release No. 77020 / February 2, 2016

**ADMINISTRATIVE PROCEEDING**
File No. 3-17086

| | |
|---|---|
| In the Matter of<br><br>**BOENNING &<br>SCATTERGOOD, INC.,**<br><br>Respondent. | ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933 AND SECTION 15(b) OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 8A of the Securities Act of 1933 ("Securities Act") and Section 15(b) of the Securities Exchange Act of 1934 ("Exchange Act") against Boenning & Scattergood, Inc. ("Respondent").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over it and the subject matter of these proceedings, which are admitted, Respondent consents to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 15(b) of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

## III.

On the basis of this Order and Respondent's Offer, the Commission finds[1] that

### Summary

1.     This matter involves violations of an antifraud provision of the federal securities laws in connection with Respondent's underwriting of certain municipal securities offerings. Respondent, a registered broker-dealer, conducted inadequate due diligence in certain offerings and as a result, failed to form a reasonable basis for believing the truthfulness of certain material representations in official statements issued in connection with those offerings. This resulted in Respondent offering and selling municipal securities on the basis of materially misleading disclosure documents. As a result of the conduct described herein, Respondent willfully violated Section 17(a)(2) of the Securities Act.[2]

2.     The violations discussed in this Order were self-reported by Respondent to the Commission pursuant to the Division of Enforcement's (the "Division") Municipalities Continuing Disclosure Cooperation Initiative.[3] Accordingly, this Order and Respondent's Offer are based on the information self-reported by Respondent.

### Respondent

3.     Respondent, incorporated in Pennsylvania and headquartered in West Conshohocken, Pennsylvania, is registered with the Commission as a broker-dealer, investment adviser, and municipal advisor.

### Due Diligence Failures

4.     Pursuant to Rule 15c2-12 of the Exchange Act, before purchasing or selling municipal securities in connection with an offering, underwriters are required to obtain executed continuing disclosure agreements from the issuers and/or obligated persons with respect to such municipal securities. In order to comply with the requirements of Rule 15c2-12, the continuing disclosure agreement must include an undertaking by the municipal issuer and/or obligated person, for the benefit of investors, to provide an annual report containing certain financial information and operating data to the Municipal Securities Rulemaking Board's ("MSRB")

---

[1]  The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

[2]  A willful violation of the securities laws means merely "'that the person charged with the duty knows what he is doing.'" Wonsover v. SEC, 205 F.3d 408, 414 (D.C. Cir. 2000) (quoting Hughes v. SEC, 174 F.2d 969, 977 (D.C. Cir. 1949)).

[3]  See Div. of Enforcement, U.S. Sec. & Exch. Comm'n, Municipalities Continuing Disclosure Cooperation Initiative, http://www.sec.gov/divisions/enforce/municipalities-continuing-disclosure-cooperation-initiative.shtml (last modified Nov. 13, 2014).

Electronic Municipal Market Access system,[4] as well as timely notice of certain specified events pertaining to the municipal securities being offered and timely notice of any failure to submit an annual report on or before the date specified in the continuing disclosure agreement.

5.      Rule 15c2-12(f)(3) requires that a final official statement set forth any instances in the previous five years in which an issuer of municipal securities, or obligated person, failed to comply in all material respects with any previous continuing disclosure undertakings.

6.      Respondent acted as either a senior or sole underwriter in a number of municipal securities offerings in which the official statements essentially represented that the issuer or obligated person had not failed to comply in all material respects with any previous continuing disclosure undertakings.  In fact, certain of these statements were materially false and/or misleading because the issuer or obligated person had not complied in all material respects with its previous continuing disclosure undertakings.  Among the offerings in which the official statements contained false or misleading statements about prior compliance were the following:

- Two negotiated securities offerings in 2011, one negotiated securities offering in 2012, and one negotiated securities offering in 2014 in which an issuer made no statement regarding its prior compliance and thereby failed to disclose that it repeatedly did not timely file several audited financial reports, ranging from five and 35 months late, and failed to file required notices of late filings for each of those;

- A 2011 negotiated securities offering, two negotiated securities offerings in 2012, and a 2014 negotiated securities offering in which an issuer either failed to disclose or made no statement regarding its prior compliance and thereby failed to disclose that it did not timely file several audited financial reports, ranging from four to 50 months late, and failed to file required notices of late filings for each of those; and

- A 2012 negotiated securities offering in which an issuer failed to disclose that it filed four audited financial reports between eight and 20 months late, despite disclosing that annual financial information for one fiscal year had not been filed, and failed to file required notices of late filings for each of those.

7.      Respondent failed to form a reasonable basis through adequate due diligence for believing the truthfulness of the assertions by these issuers and/or obligors regarding their compliance with previous continuing disclosure undertakings pursuant to Rule 15c2-12.

---

[4] Previously, Rule 15c2-12 required such information to be provided to the appropriate nationally recognized municipal securities information repositories.  In December 2008, Rule 15c2-12 was amended to designate the MSRB's Electronic Municipal Market Access system as the central repository for ongoing disclosures by municipal issuers, effective July 1, 2009.

3

## Legal Discussion

8.      Section 17(a)(2) of the Securities Act makes it unlawful "in the offer or sale of any securities . . . directly or indirectly . . . to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 15 U.S.C. § 77q(a)(2) (2012).  Negligence is sufficient to establish a violation of Section 17(a)(2).  See Aaron v. SEC, 446 U.S. 680, 696-97 (1980).  A misrepresentation or omission is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision.  See Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988).

9.      An underwriter may violate the antifraud provisions of the federal securities laws if it does not have a reasonable basis for believing the truthfulness of material statements in offering documents in connection with a securities offering, as a result of inadequate due diligence.  "By participating in an offering, an underwriter makes an implied recommendation about the securities [that it] . . . has a reasonable basis for belief in the truthfulness and *completeness* of the key representations made in any disclosure documents used in the offerings."  Dolphin & Bradbury, Inc. v. SEC, 512 F.3d 634, 641 (D.C. Cir. 2008) (emphasis added) (quoting Municipal Securities Disclosure, Exchange Act Release No. 26100, 53 Fed. Reg. 37778, 37787 (Sept. 28, 1988) ("1988 Proposing Release")); see also City Securities Corp., Exchange Act Release No. 70056, 2013 WL 3874855, at *1-2 (July 29, 2013) (finding underwriter violated anti-fraud provisions by failing to conduct due diligence related to issuer's statements regarding its compliance with previous continuing disclosure undertakings).

10.     An underwriter "occupies a vital position" in a securities offering because investors rely on its reputation, integrity, independence, and expertise.  See Dolphin & Bradbury, 512 F.3d at 641 (quoting 1988 Proposing Release, 53 Fed. Reg. at 37787).  While broker-dealers must have a reasonable basis for recommending securities to customers, underwriters have a "heightened obligation" to take steps to ensure adequate disclosure.  Id. (quoting 1988 Proposing Release, 53 Fed. Reg. at 37787 n.74).

11.     Rule 15c2-12 was adopted in an effort to improve the quality and timeliness of disclosures to investors in municipal securities.  In recognition of the fact that the disclosure of sound financial information is critical to the integrity of not just the primary market, but also the secondary markets for municipal securities, Rule 15c2-12 requires an underwriter to obtain a written agreement, for the benefit of the holders of the securities, in which the issuer undertakes (among other things) to annually submit certain financial information.  See 17 C.F.R. § 240.15c2-12(b)(5)(i) (2015); see also Municipal Securities Disclosure, Exchange Act Release No. 34961, 59 Fed. Reg. 59590, 59592 (Nov. 17, 1994).  Critical to any evaluation of an undertaking to make disclosures is the likelihood that the issuer or obligated person will abide by the undertaking.  See id. at 59594.  The disclosure requirements of Rule 15c2-12 provide an incentive for issuers and obligated persons to comply with their undertakings, allowing underwriters, investors, and others to assess the reliability of the disclosure representations.  See Municipal Securities Disclosure, 59 Fed. Reg. at 59595.

4

12.     As a result of the conduct described herein, Respondent willfully violated Section 17(a)(2) of the Securities Act.

### Cooperation

13.     In determining to accept Respondent's offer, the Commission considered the cooperation of Respondent in self-reporting the violations.

### Undertakings

14.     Respondent has undertaken to:

a.      Retain an independent consultant (the "Independent Consultant"), not unacceptable to the Commission staff, to conduct a review of Respondent's policies and procedures as they relate to municipal securities underwriting due diligence.  The Independent Consultant shall not have provided consulting, legal, auditing or other professional services to, or had any affiliation with, Respondent during the two years prior to the institution of these proceedings.  Respondent shall cooperate fully with the Independent Consultant and the Independent Consultant's compensation and expenses shall be borne by Respondent.

b.      Require the Independent Consultant to enter into an agreement that provides that for the period of engagement and for a period of two years from completion of the engagement, the Independent Consultant shall not enter into any employment, consultant, attorney-client, auditing or other professional relationship with Respondent, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity as such.  The agreement will also provide that the Independent Consultant will require that any firm with which he/she is affiliated or of which he/she is a member, and any person engaged to assist the Independent Consultant in performance of his/her duties under this Order shall not, without prior written consent of the Division enter into any employment, consultant, attorney-client, auditing or other professional relationship with Respondent, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity as such for the period of the engagement and for a period of two years after the engagement.  The agreement will also provide that, within 180 days of the institution of these proceedings, the Independent Consultant shall submit a written report of its findings to Respondent, which shall include the Independent Consultant's recommendations for changes in or improvements to Respondent's policies and procedures.

c.      Adopt all recommendations contained in the Independent Consultant's report within 90 days of the date of that report, provided, however, that within 30 days of the report, Respondent shall advise in writing the Independent Consultant and the Commission staff of any recommendations that Respondent considers to be unduly burdensome, impractical or inappropriate.  With respect to any such recommendation, Respondent need not adopt that recommendation at that time but shall propose in writing an alternative policy, procedures or system designed to achieve the same objective or purpose.  As to any recommendation on which Respondent and the Independent

5

Consultant do not agree, Respondent and the Independent Consultant shall attempt in good faith to reach an agreement within 60 days after the date of the Report. Within 15 days after the conclusion of the discussion and evaluation by Respondent and the Independent Consultant, Respondent shall require that the Independent Consultant inform Respondent and the Commission staff in writing of the Independent Consultant's final determination concerning any recommendation that Respondent considers to be unduly burdensome, impractical, or inappropriate. Within 10 days of this written communication from the Independent Consultant, Respondent may seek approval from the Commission staff to not adopt recommendations that the Respondent can demonstrate to be unduly burdensome, impractical, or inappropriate. Should the Commission staff agree that any proposed recommendations are unduly burdensome, impractical, or inappropriate, Respondent shall not be required to abide by, adopt, or implement those recommendations.

        d.      Certify, in writing, compliance with the undertakings set forth above in paragraphs 14(a)-(c). The certification shall identify the undertakings, provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance. The Commission staff may make reasonable requests for further evidence of compliance, and Respondent agrees to provide such evidence. The certification and supporting material shall be submitted to LeeAnn Ghazil Gaunt, Chief, Municipal Securities and Public Pensions Unit, with a copy to the Office of Chief Counsel of the Division, no later than the one-year anniversary of the institution of these proceedings.

        e.      Respondent shall cooperate with any subsequent investigation by the Division regarding the subject matter of this Order, including the roles of other parties.

        f.      For good cause shown, the Commission staff may extend any of the procedural dates relating to these undertakings. Deadlines for procedural dates shall be counted in calendar days, except that if the last day falls on a weekend or federal holiday, the next business day shall be considered the last day.

## IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondent's Offer.

Accordingly, pursuant to Section 8A of the Securities Act and Section 15(b) of the Exchange Act, it is hereby ORDERED that:

        A.      Respondent cease and desist from committing or causing any violations and any future violations of Section 17(a)(2) of the Securities Act.

        B.      Respondent shall, within ten (10) days of the entry of this Order, pay a civil money penalty in the amount of $250,000.00 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury in accordance with Exchange Act

Section 21F(g)(3).  If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. § 3717.  Payment must be made in one of the following ways:

(1)      Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2)      Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3)      Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Boenning & Scattergood, Inc. as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to LeeAnn Ghazil Gaunt, Chief, Municipal Securities and Public Pensions Unit, Securities and Exchange Commission, 33 Arch Street, 23rd Floor, Boston, MA 02110-1424.

C.      Respondent shall comply with the undertakings enumerated in Paragraphs 14(a)-(d), above.

By the Commission.

Brent J. Fields
Secretary